# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-3464; 06-3465; 06-3466

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Minnesota. |
| | * | |
| Tommie Perris Crawford, also known | * | |
| as "Baby Crip," | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 10, 2007
Filed: June 6, 2007 (Corrected: 06/11/2007)

_____

Before MELLOY, BOWMAN, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

After his conviction on gun and drug offenses, Tommie Perris Crawford received permission from the district court[1] to proceed pro se at sentencing. On appeal, Crawford argues the district court erred in allowing him to represent himself without first obtaining a competency evaluation. Crawford also contends he did not knowingly and intelligently waive his right to counsel and therefore his Sixth

_____

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

Amendment right to counsel was violated. For the reasons stated below, we affirm Crawford's conviction and sentence.

## I. BACKGROUND

A grand jury indicted Crawford for three felony offenses: Count 1, possession with intent to distribute 500 grams or more of cocaine, a violation of 21 U.S.C. § 841(a)(1); Count 2, possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c); and Count 3, possession of a firearm by a felon, a violation of 18 U.S.C. § 922(g). The government filed notice stating its intent to seek enhanced penalties on Count 1 based upon Crawford's prior felony drug conviction. See 21 U.S.C. § 851. With the sentencing enhancement, Crawford faced a mandatory minimum term of imprisonment of ten years (120 months) on Count 1. See 21 U.S.C. § 841(b)(1)(B). For Count 2, Crawford faced a consecutive mandatory minimum term of imprisonment of five years (60 months). See 18 U.S.C. § 924(c).

Crawford proceeded to trial with the assistance of two attorneys from the Federal Public Defender's Office and was found guilty of all charges. The jury rendered its verdict on January 9, 2006. Crawford's trial counsel did not file post-trial motions within the seven days allowed under the Federal Rules of Criminal Procedure. See Fed. R. Crim. P. 29(c)(1) and 33(b)(2). After trial Crawford filed numerous pro se motions, including motions for a new trial and motions for a judgment of acquittal. On February 17, 2006, Crawford filed a motion to proceed pro se. On April 10, 2006, at Crawford's request, Crawford's appointed counsel moved to withdraw.

On May 11, 2006, the district court issued a consolidated order ruling on defendant's motions, including his motion to proceed pro se and his counsel's motion to withdraw. The section of the order addressing Crawford's motion to proceed pro se is quoted here in full:

After the jury reached its verdict, defendant filed a motion to represent himself pro se. Defendant also requested that his counsel withdraw from his case so that he may proceed pro se, and his counsel has moved to withdraw. The Constitution guarantees an accused the right to self-representation. Faretta v. California, 422 U.S. 806, 836 (1975). However, when an accused manages his own defense, he relinquishes many of the traditional benefits associated with the right to counsel. Id. at 835. Therefore, in order for a defendant to represent himself, the defendant must "knowingly and intelligently" forgo those relinquished benefits. Id.

Here, the Court is satisfied that defendant is "knowingly and intelligently" relinquishing those benefits. In his moving papers, defendant clearly and unequivocally declares that he wants to represent himself and does not want counsel. Further, defendant has filed several motions pro se, often with accompanying memoranda. Although the Court finds his legal propositions to be without merit, defendant's papers indicate that he is "literate, competent, and understanding," and that defendant here is "voluntarily exercising his informed free will" to proceed pro se. Id. Finally, the Court notes that because defendant did not request to proceed pro se until after the jury rendered its verdict, defendant was represented by experienced and competent counsel before, during and after trial. Therefore, the Court grants defendant's motion to proceed pro se. The Court will, however, appoint Attorney Andrea K. George, of the Office of the Federal Public Defender, as standby legal counsel to defendant. See, e.g., United States v. Schmitt, 784 F.2d 880, 882 (8th Cir. 1986).

Order at 10-11 (footnotes omitted).

Crawford's sentencing hearing was held on September 21, 2006. At the beginning of the hearing, the district court confirmed that Crawford was appearing pro se and that Ms. George was standby counsel. The district court did not engage Crawford in a colloquy regarding his self-representation. The district court sentenced Crawford to a total term of imprisonment of 180 months. Crawford received the

statutory mandatory minimum of 120 months for Count 1 and a concurrent term of 120 months on Count 3, along with the statutory mandatory minimum consecutive term of 60 months on Count 2. This appeal followed.

## II.    DISCUSSION

Crawford argues the district court erred by allowing him to represent himself after trial. In presenting his appeal, Crawford assumes he was pro se for post-trial motions and for sentencing. Crawford first contends the district court should have examined whether he was competent to waive his Sixth Amendment right to counsel. He also argues his waiver of the right to counsel was not knowing and intelligent. He asserts he suffered prejudice as a result of his lack of counsel because an attorney could have more persuasively argued his post-trial motions and could have capitalized on the additional discretion allowed to district judges in sentencing after United States v. Booker, 543 U.S. 220 (2005).

As a preliminary matter, we must determine whether Crawford was without counsel in relation to post-trial motions. There is nothing in the record that demonstrates Crawford's counsel had been relieved of their appointed representation when post-trial motions were due; they represented Crawford up until the district court's May 11 order, when the court granted Crawford's motion to proceed pro se and counsel's motion to withdraw. Indeed, Crawford did not file his motion to proceed pro se until almost one month after post-trial motions were due. Thus, Crawford was not pro se for purposes of post-trial motions. While Crawford's counsel did not file post-trial motions on his behalf, any arguments based upon that failure to file should be raised in a proceeding brought under 28 U.S.C. § 2255. United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998) (explaining that claims alleging ineffective assistance of counsel should normally be addressed in § 2255 proceedings). Therefore, we consider Crawford's claims only as they relate to sentencing.

A.     Competency Evaluation

Crawford asserts the district court erred by not ordering an evaluation to determine whether Crawford was competent to waive his right to an attorney. Crawford contends the district court should have exercised its authority to order a competency evaluation, even without a request from the government or the defense. See 18 U.S.C. § 4241(a), (b) (stating that a court "shall order" a competency hearing upon its own motion if "there is reasonable cause to believe" a defendant is not competent and that a court "may order" a psychological evaluation prior to such a hearing).

Before allowing a defendant to waive his right to counsel, a court must be satisfied that the defendant is competent to do so. Godinez v. Moran, 509 U.S. 389, 400 (1993). Generally, a court need not sua sponte order an evaluation to determine a defendant's competence to waive counsel; "[a]s in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." Id. at 401 n.13. Unless "evidence raises sufficient doubt" about a defendant's competence, further inquiry is not required. Branscomb v. Norris, 47 F.3d 258, 261 (8th Cir. 1995); see also United States v. Day, 998 F.2d 622, 627 (8th Cir. 1993) (holding that a district court did not err when it did not conduct a competency hearing prior to allowing a defendant to proceed pro se at sentencing). Whether a competency evaluation is warranted is a determination within the discretion of the district court. See United States v. Vamos, 797 F.2d 1146, 1150-51 (2d Cir. 1986).

Here, Crawford's trial counsel did not request a competency evaluation prior to the court's consideration of Crawford's motion to proceed pro se. The district court presided over Crawford's trial and had the opportunity to observe him directly, and it did not find a competency evaluation necessary. Cf. id. at 1150 (noting that "deference is owed to the district court's determinations based on observation of the defendant during the proceedings"). The district court specifically concluded

Crawford was competent, noting that Crawford's multiple filings in the district court indicated he was "literate, competent, and understanding." The district court did not abuse its discretion by not ordering a competency evaluation.

B.     Sixth Amendment Waiver

Since the Supreme Court's decision in Faretta v. California, 422 U.S. 806 (1975), "[i]t is . . . settled law that a criminal defendant has the right to waive his right to counsel at trial and to represent himself as long as the waiver is both voluntary, and intelligently and knowingly made." Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988). This right extends to self-representation at sentencing, as well. See Day, 998 F.2d at 626-27 (considering whether a defendant executed a valid waiver of his right to counsel before proceeding pro se at sentencing). This Court reviews de novo a district court's decision to allow a defendant to proceed pro se. United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006).

In reviewing a waiver of a defendant's right to counsel, this Court will uphold a waiver and conclude it is knowing and intelligent if either (1) the district court adequately warns the defendant about the dangers and disadvantages of proceeding pro se or (2) the record as a whole demonstrates "that the defendant knew and understood the disadvantages of self-representation." United States v. Stewart, 20 F.3d 911, 917 (8th Cir. 1994). An on-the-record colloquy exploring the dangers of self-representation is recognized as the preferred method of substantiating a waiver's validity. See Meyer, 854 F.2d at 1114-15 (indicating the court favors "a specific warning on the record of the dangers and disadvantages of self-representation" when a defendant seeks to proceed pro se). Here, the district court did not engage in a colloquy with Crawford. The validity of Crawford's waiver must therefore be determined by "review[ing] the entire record to determine if the defendant had the required knowledge from other sources." United States v. Yagow, 953 F.2d 427, 431 (8th Cir. 1992).

In considering the record, we begin with the district court's order granting Crawford's motion to proceed pro se. The district court references Crawford's many filings in concluding Crawford was "voluntarily exercising his informed free will" in deciding to proceed pro se. However, the court does not explain how the filings show Crawford to be "informed" as to the dangers of self-representation. In its order, the district court conflates Crawford's determination to proceed pro se, with his understanding of the challenges of doing so. One cannot infer from the substance of the filings that Crawford had the knowledge required to effectively waive his right to counsel. The district court did not indicate any other grounds supporting its conclusion that Crawford's waiver was knowing and intelligent.

The government does not provide any additional insight into facts and circumstances demonstrating Crawford possessed the requisite knowledge of the dangers of pro se representation. The government argues only that the district court "had confidence that Crawford was aware of the pitfalls of his self-representation and that he had the required knowledge to represent himself" based upon the district court's observations of Crawford at trial and upon the court's consideration of Crawford's filings. The government does not highlight anything about "the particular facts and circumstances of the case, including the defendant's background, experience, and conduct" or "the defendant's education, his knowledge of or previous contact with the criminal justice system, his conduct at trial, and his motive for seeking to waive counsel" that demonstrates Crawford understood the challenges of proceeding pro se. Yagow, 953 F.2d at 431.

After a thorough review of the record, we cannot conclude Crawford possessed the requisite understanding of the challenges of proceeding without counsel to have knowingly and intelligently waived his right to an attorney. While we recognize "the Supreme Court [has] adopted a 'pragmatic approach' to the issue of Sixth Amendment waiver of counsel," Day, 998 F.2d at 626 (quoting Patterson v. Illinois, 487 U.S. 285,

298 (1988)), the record in this case simply does not provide sufficient indication that Crawford understood "the possible consequences of a decision to forgo the aid of counsel[.]" Patterson, 487 U.S. at 292-93. Unlike other instances where we have upheld a court's decision to permit a defendant to proceed pro se without the preferred colloquy, there are no "unique circumstances" justifying a determination that Crawford knowingly and intelligently waived his right to counsel. Yagow, 953 F.2d at 432. For example, Crawford did not display "a sophisticated understanding of the [sentencing] hearing's purposes and procedure," Day, 998 F.2d at 627, nor does it appear his request for self-representation was an attempt to manipulate the court. Cf. Meyer, 854 F.2d at 1115 ("One other major factor leading us to the conclusion that there was no violation of the right to counsel is the fact that the record indicates that [the defendant's] actions in moving for replacement counsel midway through the trial were largely obstructionist."). Based upon the record before us, we cannot conclude Crawford's waiver of counsel at sentencing was valid.

Our conclusion that Crawford did not effectively waive his right to counsel at sentencing presents a question this court has not specifically decided: whether such a violation is subject to harmless error analysis. Dicta in Day can be interpreted as implicitly endorsing harmless error analysis. The defendant in Day proceeded pro se at sentencing after objecting to three different attorneys appointed to represent him. Day, 998 F.2d at 626. In finding that the defendant voluntarily, knowingly, and intelligently waived his right to counsel, the Court concluded its analysis by noting that "there is nothing in the record to suggest that further delay and a fourth appointed counsel would have produced a different sentence." Id. at 627. This suggests that lack of prejudice suffered by a defendant could be relevant.

Other circuits have explicitly rejected harmless error analysis for Sixth Amendment violations at sentencing. See, e.g., United States v. Virgil, 444 F.3d 447, 455-56 (5th Cir. 2006) (holding that Faretta violations, whether at trial or sentencing, are per se harmful and therefore not subject to harmless error analysis and noting that

"every other circuit to consider the issue" does not apply harmless error analysis to Faretta violations); United States v. Salemo, 61 F.3d 214, 221-22 (3rd Cir. 1995) (declining to apply harmless error analysis when a defendant's Sixth Amendment right to counsel was violated at sentencing). In Virgil, the Fifth Circuit reasoned that the Supreme Court's decisions finding harmless error inapplicable to the denial of counsel at trial, United States v. Cronic, 466 U.S. 648, 659 (1984), and on appeal, Penson v. Ohio, 488 U.S. 75, 88 (1988), equally support the conclusion that the lack of counsel at sentencing cannot be harmless error. Virgil, 444 F.3d at 456. Salemo describes the right to counsel at sentencing as "among those constitutional rights which are so basic to a fair trial that their infraction can never be treated as harmless error." Salemo, 61 F.3d at 222 (quotation and alternation omitted). See also United States v. Balough, 820 F.2d 1485, 1490 (9th Cir. 1987) (finding harmless error analysis inappropriate where a defendant was denied his right to counsel at a hearing on a motion to withdraw his guilty plea and at sentencing).

Others have advocated a more nuanced approach. Then-Judge Alito expressed disagreement with a broad prohibition against applying harmless error analysis in the context presented here. Salemo, 61 F.3d at 222-23 (Alito, J., concurring). Using the exact factual scenario in the instant case as his hypothetical—a defendant who did not validly waive counsel at sentencing but was sentenced to the statutory mandatory minimum—Judge Alito highlighted the potential problems of such an approach. Id. at 223 n.1. In such a case, vacating and remanding would result in the imposition of the same sentence with counsel present—a futile exercise in form over substance.

The approach taken by the Eleventh Circuit in a slightly different context is instructive. Golden v. Newsome, 755 F.2d 1478 (11th Cir. 1985), addresses the concerns raised by Judge Alito's hypothetical, as well as the facts of this case. Golden considered whether absconding from custody during trial amounts to an effective waiver of counsel for sentencing. Id. at 1481. In concluding that escape does not constitute a valid waiver of counsel, the Eleventh Circuit notes it presumes prejudice

when a defendant does not effectively waive counsel at sentencing, unless the court sentences the defendant to the minimum term of imprisonment allowed by law. Id. at 1483 n.9. Thus, if the sentencing court lacked the authority to impose a more lenient sentence than the defendant received, the Eleventh Circuit applies harmless error review.

We acknowledge that our sister circuits to consider the issue have concluded harmless error review is inappropriate when a defendant does not effectuate a valid waiver of counsel at sentencing, as discussed above. Indeed, the Tenth Circuit has held that harmless error review is never appropriate in waiver-of-counsel cases. See United States v. Allen, 895 F.2d 1577, 1580 (10th Cir. 1990). This case does not require such a broad holding, however. Rather, we limit our holding to the unique circumstance presented here: when the district court lacked the authority to impose a more lenient sentence than the defendant received. In that limited circumstance, we agree with the Eleventh Circuit that harmless error review is appropriate.

We therefore conclude the constitutional error in this case is harmless beyond a reasonable doubt. Although there was not an effective waiver of counsel at sentencing, Crawford was sentenced to the minimum term of imprisonment allowed by statute. Crawford cannot articulate any harm suffered due to his lack of representation at sentencing because the district court could not have imposed a more lenient sentence. See Melendez v. United States, 518 U.S. 120, 125-26 (1996) (stating that, absent a motion by the government under 18 U.S.C. § 3553(e), the district court lacks the authority to sentence below the statutory mandatory minimum sentence). Crawford's argument that an attorney could have taken advantage of the discretion available to sentencing courts after United States v. Booker, 543 U.S. 220 (2005), is unavailing. Booker made the United States Sentencing Guidelines advisory, but had no effect upon statutory sentencing schemes. See United States v. Rojas-Coria, 401 F.3d 871, 874 n.4 (8th Cir. 2005) (noting that Booker has no impact upon a sentence determined by a statutory mandatory minimum). Because Crawford's sentence was

driven by mandatory minimum terms of incarceration defined by statute, there is nothing *any* attorney could have done to achieve a more favorable result at sentencing. The Sixth Amendment violation is harmless beyond a reasonable doubt.

III.    CONCLUSION

For the reasons articulated above, we affirm the judgment of the district court.

_____